CLARKCO LANDFILL COMPANY,
Plaintiff,

v.

CLARK COUNTY SOLID WASTE
MANAGEMENT DISTRICT,
et al., Defendants.

No. C–3–98–251.

United States District Court,
S.D. Ohio,
Western Division.

March 10, 1999.

Charles Joseph Faruki, Jeffrey T. Cox, Faruki Gilliam & Ireland, Dayton, OH, for Clarkco Landfill Company, plaintiff.

Henry N. Heuerman, Joseph A. Gregg, Eastman & Smith, Toledo, OH, for Clark County Solid Waste Management District, defendant.

Thomas Edward Trempe, Clark County Prosecutor—3, Springfield, OH, for German Township Trustees, defendant.

## DECISION AND ENTRY OVERRULING, AS MOOT, CLARK COUNTY DEFENDANTS' MOTION TO ABSTAIN (DOC. #8); DECISION AND ENTRY SUSTAINING CLARK COUNTY DEFENDANTS' MOTION TO DISMISS (DOC. #14); FURTHER PROCEDURES ORDERED

RICE, Chief Judge.

This litigation arises out of the efforts of Plaintiff to construct a landfill on property located in Clark County, Ohio ("Clark County").[1] The Plaintiff brings this litigation against the Clark County Solid Waste Management District ("District"), the Board of Commissioners of Clark County ("Board"), Roger Tackett ("Tackett"), James Sheehan ("Sheehan"), John Detrick ("Detrick"), W. Darrell Howard ("Howard"), Jeffry Johnson ("Johnson") and the Trustees of German Township ("Trust-ees").[2] Tackett, Sheehan and Detrick are alleged to be the members of the Board and Directors of the District. Howard and Johnson are alleged to be, respectively, the Administrator and Assistant Administrator for Clark County. All individuals have been named as Defendants, solely in their official capacities.[3]

The District is a single county solid waste management district, organized by the Board in 1988, pursuant to §§ 343.01, et seq., and §§ 3734.52, et seq., of the Ohio Revised Code. The members of the Board serve as the Directors for the District. In accordance with the statutes, the District adopted an initial solid waste management plan ("Initial Plan"), which was approved by the Ohio Environmental Protection Agency ("Ohio EPA") in February, 1992. The District's amended solid waste management plan ("Amended Plan") was approved by the Ohio EPA in September, 1996, and remains in effect at present.

In its Complaint, Plaintiff alleges that, in 1969, one of its affiliates, Tremont Landfill Company (and its predecessor),[4] began to operate the Tremont Landfill, which is located in German Township, Clark County. That landfill was closed in September, 1994, after its capacity had been reached. In 1986, affiliates of the Plaintiff began to acquire parcels of land adjacent to the Tremont Landfill, with the intention of developing a landfill on the acquired parcels ("the Property"). Throughout the late 1980's, Clark County and its officials led the Plaintiff and its affiliates to believe that it would be permitted to build a landfill on the Property.

---

1. The Plaintiff was formerly known as Danis Clarkco Landfill Company.

2. For purposes of convenience, the Court will at times refer to the District, Board, Tackett, Sheehan, Detrick, Howard and Johnson collectively as the "Clark County Defendants."

3. Since this case is before the Court on the Clark County Defendants' Motion to Dismiss, the Court derives the following recitation of the facts from the allegations contained in the Plaintiff's Complaint, construing those allegations in the manner most favorable to the Plaintiff.

4. Plaintiff is a wholly owned subsidiary of Danis Environmental Management Company, which is a wholly owned subsidiary of The Danis Companies ("Danis"). Tremont Landfill Company is also a wholly owned subsidiary of Danis. In its Complaint, Plaintiff frequently refers to Danis and its subsidiaries or affiliates as Danis. Herein, the Court uses "affiliates" to refer to any entity with which Plaintiff is related by common ownership.

For instance, in both the Initial and Amended Plans, the proposed landfill was identified as a facility that would receive solid waste generated within Clark County. Moreover, in 1988, Howard encouraged Plaintiff's affiliates to develop the Property as a landfill.

To reach its goal of constructing and operating a landfill at that site, Plaintiff and its affiliates have invested in excess of $5 million, to purchase and to develop the Property. That sum has been expended to acquire property, for professional services and for costs to secure the necessary permits and licenses. On February 7, 1992, the Plaintiff applied to the Ohio EPA for a permit to install ("PTI") a sanitary landfill on the Property. After lengthy proceedings before that administrative agency, the Ohio EPA issued a PTI to Plaintiff on February 8, 1996.[5] The Plaintiff has also obtained a permit from the Army Corps of Engineers, allowing it to move wetlands, and an additional permit from the Ohio EPA, concerning air quality standards.

The initial support given to the Plaintiff and its affiliates by Clark County and its officials changed to hostility at some point in the early 1990's. In 1992, Clark County refused to select Plaintiff's landfill during two requests for a proposal concerning the long-term waste disposal needs for Clark County, despite the fact that it was the low bidder on each occasion. Instead, Clark County selected a proposed mass-burn option.[6] Ultimately, the vendor selected to construct the mass-burn facility backed out of its proposal, and that technology has been abandoned as an option. In addition, Plaintiff has faced opposition from a citizens group in Clark County, "Citizens for Wise Actions Towards Environmental Resources" ("CF/Water"). That group has been financially supported by the Trustees. Various officials of Clark County have been in communication with members of CW/Water, discussing, *inter alia,* the need for county officials to exercise caution in their comments about the Plaintiff's proposed landfill, so as to avoid the appearance of having prejudged the issue.

In 1993, the District adopted Rules 2–393 and 3–393, which regulated the siting process for landfills within Clark County. Among other provisions, those rules provided the District with the authority to consider design standards when deciding whether to permit the construction of a landfill within Clark County. Shortly thereafter, the District filed a declaratory judgment action against Plaintiff and the Director of the Ohio EPA. The Clark County Court of Appeals ultimately declared invalid that portion of the rules which permitted the District to consider design standards when making siting decisions, since such standards were within the exclusive province of the Ohio EPA. *Clark County Solid Waste Mgt. District v. Danis Clarkco Landfill,* 109 Ohio App.3d 19, 671 N.E.2d 1034 (1996).[7] Rules 2–393 and 3–

**5.** After this litigation was initiated, the Ohio Environmental Review Appeals Commission reversed the decision of the Ohio EPA to issue that PTI. *C.F./Water Schregardus,* 1999 WL 1126437 (WL Ohio App. October 28, 1999). Accordingly, no permit to install a landfill on the Property is presently extant.

**6.** That decision led to litigation between the parties, with the Ohio Supreme Court ultimately concluding that Clark County had not violated state law, by selecting the mass-burn option. *Danis Clarkco Landfill v. Solid Waste Management,* 73 Ohio St.3d 590, 653 N.E.2d 646 (1995).

**7.** In addition to being involved in litigation with the District, the Plaintiff sued the Trustees and obtained a permanent injunction ordering them to give it a zoning certificate to construct a landfill. *Danis Clarkco Landfill Company v. Trustees of German Township,* Case No. C–3–96–481 (S.D.Ohio). Although the Trustees appealed that decision to the Sixth Circuit Court of Appeals, that appeal was dismissed pursuant to the stipulation of the parties. *See* Case No. C–3–96–481 at Doc. # 117. That litigation was terminated when a Corrected Judgment, awarding Plaintiff attorney's fees in the amount of approximately $306,000, was entered on September 9, 1998. *See Id.* at Doc. # 132. No appeal was taken from that Corrected Judgment. Because the Plaintiff's federal claims in that litigation were predicated upon a legal theory similar to

393 have since been rescinded and replaced with Rule 1–796, which now governs the siting of landfills within Clark County. Under Rule 1–796, the District will consider, when determining whether to permit a landfill to be located within that County, access to the site and traffic, isolation from adjacent properties, isolation from sensitive ecology, isolation from important historic and cultural features, compatibility with land use/comprehensive plan, nuisance abatement, cost, host community considerations and any other appropriate concern.

On the same day that it initiated this litigation, the Plaintiff submitted to the District its plans and specifications for siting approval.[8] However, the Plaintiff alleged in its Complaint that said submission is futile, since any review by the District will be a sham, given the fact that its Directors have prejudged the issue and are prejudiced against the construction of a landfill. Thus, the Plaintiff alleges that it is entitled "to get on with its business of constructing a new sanitary landfill without further delay or interference." Doc. # 1 at ¶ # 48. The Plaintiff contends that any further delay or interference will deprive it of property without due process of law, in violation of the Due Process Clause contained in the Fourteenth Amendment. According to Plaintiff, that property interest is its:

> reasonable investment-backed expectations of the use of the Property as a landfill as a result of (a) its ownership of

the land[;] (b) its long-publicized and oft-litigated intention to use the property for construction, maintenance and operation of a sanitary landfill, and its reliance on the results of those litigations[;] (c) its substantial expenditures in furtherance of the project including site development and permitting initiatives, and the plans and specifications it has developed[;] (d) its publically-announced plans to use, and its right to use, the property for the intended purpose of a sanitary landfill, which vested before the promulgation of original (and now rescinded) County Rules Nos. 2–393 and 3–393[;] (e) its property interest in and reliance upon the approved environmental permits[;] and (f) the award of and Plaintiff's reliance upon the zoning certificate and permanent injunction granted by this Court in the zoning litigation with German Township.

*Id.* at ¶ 49.

In its Complaint, the Plaintiff sets forth ten claims for relief, three of which arise under federal law, with the other seven arising under the laws of Ohio. For present purposes, the Court will limit its description to the Plaintiff's three federal claims.[9] Each of those three claims is predicated in part on the contention that the Clark County Defendants are biased and prejudiced against locating the landfill where proposed and that, therefore, it will be denied a fair and impartial review of its application.

---

8. On December 15, 1998, the District voted to deny siting approval or permission to Plaintiff to construct a landfill on the Property.

9. This case is before the Court, *inter alia,* on the Clarkco County Defendants' Motion to Dismiss (Doc. # 14). With that motion, those Defendants argue that the Court should dismiss the Plaintiff's federal claims and decline to exercise supplemental jurisdiction over its state law claims. In other words, the Clark County Defendants do not argue that the Plaintiff's state law causes of action fail to state claims upon which relief can be granted. Therefore, it is not necessary for the Court to describe the Plaintiff's state law claims.

the one that underlies some of its claims herein, the Plaintiff has cited the Decision entered therein in its Complaint and attached to that pleading a copy of the Report and Recommendations Magistrate Judge Michael Merz issued therein. That litigation arose out of an application of the German Township zoning ordinances, while this lawsuit is a challenge to the District's rules concerning the siting of landfills. Given that the two cases arise out of the application of different land use regulations by different levels of government, the result reached in that litigation is by no means controlling herein.

In its First Claim for Relief (Doc. # 1 at ¶¶ 57–68), Plaintiff sets forth a substantive due process claim under 42 U.S.C. § 1983 (" § 1983"), alleging that the Defendants, by arbitrarily and capriciously denying it the right to construct a landfill on the Property, will deprive it of the right to property without due process, in violation of the Due Process Clause contained in the Fourteenth Amendment. In particular, the Plaintiff asserts that it has "a legitimate claim of entitlement and justifiable expectation" to use the Property as a landfill. Doc. # 1 at ¶ 58. The Plaintiff also contends that the Defendants will fail to give fair and impartial consideration to its request for siting approval and that they will employ Rule 1–796 to achieve their long sought goal of defeating its plans to construct a landfill.

In its Second Claim for Relief (Doc. # 1 at ¶¶ 69–92), the Plaintiff sets forth a procedural due process claim under § 1983. This claim is premised upon the same property interest as its substantive due process claim. The Plaintiff contends that it is being deprived of property without due process of law, because the Clark County Defendants have prejudged the issue; therefore, it is being denied its right, under the Due Process Clause, to have the dispute decided by a fair and impartial body, free of bias. In support of that allegation, the Plaintiff quotes numerous statements from the individual Defendants (as well as their predecessors), in which they expressed opposition to constructing a landfill on the Property. In addition, the Plaintiff cites editorials from the *Springfield News–Sun* which have expressed opposition to siting a landfill at that location.

With its Third Claim for Relief (Doc. # 1 at ¶¶ 93–96), Plaintiff sets forth a claim under the Dormant Commerce Clause, Article 1, § 8, clause 3 of the United States Constitution. Plaintiff alleges that it anticipates the receipt of solid waste at its landfill that has moved in interstate commerce. According to Plaintiff, it and its affiliates purchased the property with the intention of operating a landfill that would be capable of accepting waste from inside and outside of Ohio. The Plaintiff contends that prejudicial application of the siting review process against its landfill will prevent it from accepting such solid waste. Although the Plaintiff does not expressly so allege, the Court presumes that Plaintiff's theory is that those actions discriminate against or unduly burden interstate commerce.

With all of its claims, the Plaintiff seeks injunctive relief, preventing the Defendants from employing the siting review process contained in Rule 1–796 and the Amended Plan, as to its proposed landfill, and from interfering or hindering the construction of a landfill. In the alternative, Plaintiff requests injunctive relief, ordering the Defendants to grant approval to construct the landfill. In addition, the Plaintiff seeks to recover its costs, including reasonable attorney's fees, in accordance with 42 U.S.C. § 1988.

This case is now before the Court on the Clark County Defendants' Motion for Abstention (Doc. # 8) and their Motion to Dismiss (Doc. # 14). Abstention doctrines are equitable principles whereby federal courts may, under certain circumstances, decline to exercise the subject matter jurisdiction which they otherwise possess. *See e.g., City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 534, 139 L.Ed.2d 525 (1997). This Court deems it inappropriate to engage in an analysis to determine whether the familiar factors that drive the abstention doctrines caution against the exercise of its subject matter jurisdiction, before first deciding whether the Plaintiff has plead any valid federal claims over which this Court can exercise that jurisdiction.[10] Accordingly, the Court initially addresses

---

**10.** The Plaintiff has invoked this Court's federal question jurisdiction. *See* 28 U.S.C. § 1331.

the Motion to Dismiss. In the event that it concludes that the Plaintiff has plead one or more valid federal claims, it will address the request for abstention.

### I. Clark County Defendants' Motion to Dismiss (Doc. # 14)

The Court begins its analysis by reviewing the standards which govern motions to dismiss, following which it will turn to the parties arguments concerning the Plaintiff's three federal claims, discussing together the Plaintiff's two claims under the Due Process Clause of the Fourteenth Amendment.

### A. Standards Governing Motions to Dismiss

■ In *In re DeLorean Motor Co.*, 991 F.2d 1236 (6th Cir.1993), the Sixth Circuit restated the standards which govern motions to dismiss for failure to state a claim upon which relief can be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure: [11]

> We review dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on a *de novo* basis. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). This

Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *Id.* While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). "in practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id.* (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)), cert. denied, 470 U.S. 1054, 105

---

11. The Clark County Defendants also argue that the Plaintiff's claims are not ripe for adjudication, because, at the time this litigation was initiated, the District had not completed its review of the Plaintiff's plans and specifications. This Court's subject matter jurisdiction is limited to cases that are ripe. *Briggs v. Ohio Elections Commission*, 61 F.3d 487, 492 (6th Cir.1995). Therefore, the Clark County Defendants have argued that this Court should utilize the standards applicable to motion to dismiss for want of subject matter jurisdiction under Rule 12(b)(1), when ruling upon their motion. This Court does not agree. Regardless of whether the Plaintiff's claims were ripe when it initiated this litigation (the Plaintiff by no means concedes that its claims were not ripe), the District has now completed this review and has concluded that the Plaintiff cannot construct the proposed landfill. Therefore, the Clark County Defendants' assertion that the Plaintiff's claims are not ripe, because the District's proceedings have not been completed, is no longer sup-

portable by the circumstances of this litigation. Indeed, in *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the case upon which the Clark County Defendants base their lack of ripeness argument, the Supreme Court said that a claim is not ripe, until the governmental agency implementing regulations has reached its final determination regarding the property at issue. That has happened in this case. Accordingly, the Court treats the Clark County Defendants' motion strictly as one to dismiss for failure to state a claim upon which relief can be granted, under Rule 12(b)(6).

Parenthetically, for similar reasons, the Court also rejects the Clark County Defendants' argument that, before initiating this litigation, the Plaintiff was required to make one meaningful application for approval, even if the Directors of the District were biased. The Plaintiff sought siting approval from the District, which its Directors denied on December 15, 1998.

S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981)).

*Id.* at 1239–40. *See also, Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mertik v. Blalock*, 983 F.2d 1353, 1356 (6th Cir.1993). Under Rule 12(b), a court has discretion to convert a motion under Rule 12(b)(6) to one for summary judgment, when the motion has been supported or opposed by materials beyond the plaintiff's complaint. *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir.1998). Although the Clark County Defendants have supported their Motion to Dismiss with materials beyond the allegations contained in Plaintiff's Complaint, this Court does not consider it necessary to convert the instant motion into one for summary judgment. In particular, the Clark County Defendants have attached, to their motion, portions of Rule 1–796 and a copy of the Notice of Appeal that the Plaintiff filed before the Ohio Environmental Review Appeals Commission, challenging the approval of the District's Amended Plan by the Director of the Ohio EPA. Those Defendants have also supplied copies of the District's resolution, denying the Plaintiff's request for permission to site the landfill on the Property, and the decision of the Ohio Environmental Review Appeals Commission, reversing the grant of the PTI to the Plaintiff. *See* Doc. # 31. The Sixth Circuit has indicated that a District Court may consider matters of public record, orders and the like, without converting a motion under Rule 12(b)(6) into one for summary judgment

under Rule 56. *Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir.1997). *See also, In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3rd Cir.1997) (District Court may rely upon materials that are mentioned in or integral to a plaintiff's complaint without converting a motion to dismiss into one for summary judgment). Since the materials that the Clark County Defendants have furnished (i.e., the District's resolution denying Plaintiff's request for permission the site a landfill on the Property, the decision of the Ohio Environmental Review Appeals Commission, the portions of Rule 1–796 and Plaintiff's Notice of Appeal) are all matters of public record, this Court may consider them without converting their motion into one for summary judgment.[12] In another more troubling manner, the Clark County Defendants have attempted to expand the universe of information, upon which this Court will base its ruling on their Motion to Dismiss. Their memorandum is replete with factual assertions that are derived from neither allegations in the Plaintiff's Complaint nor the materials listed above. For purposes of ruling on the instant motion, this Court has disregarded the Clark County Defendants' unsupported version of events.

## B. Substantive and Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property, without due process of law."[13]

---

**12.** In response to the filing of the District's resolution, the Plaintiff has submitted a transcript of the meeting at which that resolution was adopted. According to the Plaintiff, the transcript is necessary to a full understanding of the resolution. In ruling on the Clark County Defendants' motion, the Court will not consider that transcript. Moreover, the Court only considers the resolution for the purpose of establishing the fact that the Plaintiff has been denied the right to construct and to operate a landfill on the Property. In other words, the Court will not consider any of the assertions contained in the resolution.

**13.** In its Complaint, the Plaintiff also mentions the Due Process Clause contained in the Fifth Amendment to the United States Constitution. *See* Doc. # 1 at ¶ 8 and ¶ 71. The Due Process Clause contained in that amendment, unlike its counterpart in the Fourteenth Amendment, applies only to the federal government. *Bartkus v. Illinois*, 359 U.S. 121, 124, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Shepherdson v. Nigro*, 5 F.Supp.2d 305, 307 (E.D.Pa.1998); *Estate of Conner v. Ambrose*, 990 F.Supp. 606 (N.D.Ind.1997). Therefore, the Court will limit its discussion to the Fourteenth Amendment.

That constitutional provision has substantive and procedural aspects. The Plaintiff brings claims of both substantive and procedural due process. Those claims both flow from the Plaintiff's contention that it has a property interest in operating a landfill on the Property. The specific contours of that property interest are set forth in ¶ 49 of the Plaintiff's Complaint, which is quoted above. In addition, those claims both emanate from the Plaintiff's contention that it will not be able to obtain a fair hearing from the District, because its Directors have prejudged the issue of whether a landfill should be permitted on the Property. The Clark County Defendants argue that the Court must dismiss the Plaintiff's two claims under the Due Process Clause, because it does not have a constitutionally protected property interest. The Court begins its analysis of that argument with a brief review the applicable principles of due process jurisprudence.

 A governmental action that arbitrarily and capriciously deprives a person of property violates the substantive component of due process. *37712, Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614 (6th Cir.1997). In addition, the deprivation of property without certain procedural protections constitutes a violation of the procedural component of due process. *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097 (6th Cir.1995). Regardless of whether a plaintiff asserts a claim under the substantive or the procedural component of the Due Process Clause, it must allege that it has suffered a deprivation of an interest in property. *Silver v. Franklin Tp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir.1992) ("[t]o establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally protect-

ed property ... interest"); *LRL Properties*, 55 F.3d at 1108 ("[t]o prevail on its (sic) procedural due process claim, the plaintiffs must prove that they had a definite ... property interest"). In *Ferencz v. Hairston*, 119 F.3d 1244 (6th Cir.1997), the Sixth Circuit restated the familiar principles that a court must apply when determining whether a plaintiff has a constitutionally protected property interest:

> To establish a property interest in a particular benefit, a plaintiff must have a "legitimate claim of entitlement to it." *[Board of Regents v.] Roth*, 408 U.S. [564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ]. Property interests are not created by the Fourteenth Amendment; instead, they are "created and defined by independent sources, such as state law." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir.1985) (*citing Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)).

*Id.* at 1247. Of course, a party's unilateral desire for a particular governmental permit is not a property interest. *Id.* at 1248. In the context of due process challenges in land use cases, the Sixth Circuit has indicated that a property interest can consist of a "legitimate claim of entitlement" or a "justifiable expectation." *Silver*, 966 F.2d at 1036. *Accord, Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202 (6th Cir.), *cert. denied*, 516 U.S. 816, 116 S.Ct. 70, 133 L.Ed.2d 31 (1995). As is indicated, the Clark County Defendants argue that the Plaintiff does not have a property interest in constructing a landfill on the Property. In support of that argument, those Defendants rely upon cases such as *Silver*. For reasons that follow, this Court agrees.[14] However, before setting forth its

---

14. Although there is generally no requirement that a plaintiff exhaust state remedies before bringing an action under § 1983 (*Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)), the Supreme Court has

recognized that a plaintiff, asserting a procedural due process claim, must allege and prove that state remedies are inadequate. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). However, the

reasoning, the Court will briefly address two issues which relate to the nature of the property interest alleged by the Plaintiff, to wit: 1) whether the Plaintiff could have a property interest in having its request to site a landfill on the Property decided by a fair and impartial decision maker; and 2) the effect of the decision of the Ohio Environmental Review Appeals Commission on the property interest alleged by the Plaintiff.

*First*, the Plaintiff's due process claims are predicated upon the allegation that the Directors of the District are prejudiced and biased and that, therefore, they will not give fair and impartial consideration to its request for approval to site a landfill on the Property. These allegations of partiality are not part of the property interest, of which the Plaintiff asserts that it is suffering a deprivation; rather, prejudice and bias constitute the manner in which it has been denied due process. In other words, a fair and impartial decision maker is part of the process that is due, instead of the property interest being deprived. Indeed, it would have been futile for the Plaintiff to allege that it had a property interest in a fair and impartial decision maker (as opposed to a due process right not to be deprived of property by a biased and prejudiced decision maker). The cases in which courts have held that a party has suffered a denial of due process, as a result of being deprived of a property interest by a biased and prejudiced decision maker, have stressed that a fair and impartial decision maker is part of the process that is due, rather than being part of the property interest. For instance, in *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.,* 508 U.S. 602, 113 S.Ct.

2264, 124 L.Ed.2d 539 (1993), the Supreme Court wrote:

> *Before one may be deprived of a protected interest,* whether in a criminal or civil setting, ... one is entitled as a matter of due process of law to an adjudicator who is not in a situation which would offer a possible temptation to the average man as a judge ... which might lead him not to hold the balance nice, clear and true.... Even appeal and a trial de novo will not cure a failure to provide a neutral and detached adjudicator.

*Id.* at 617–18, 113 S.Ct. 2264 (citations and internal quotation marks omitted and emphasis added). *See also, Ward v. Village of Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) ("it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case") (citation and internal quotation marks omitted). Since there is no need to reach the question of whether Plaintiff received the process that was due, if it does not have a property interest in constructing and operating such a landfill, the issue of whether the District's Directors are biased and prejudiced against siting a landfill on the Property need not be addressed, unless the Plaintiff has alleged facts and circumstances that amount to its having such a constitutionally protected property interest, as a matter of law.

■ *Second,* on October 22, 1998, the Ohio Environmental Review Appeals Commission issued its decision, concluding that the Director of the Ohio EPA had erroneously granted the PTI to Plaintiff.[15]

plaintiff need not establish the inadequacy of state remedies, where the deprivation of property was caused by the enforcement of established state procedures. *See e.g., Moore v. Board of Education,* 134 F.3d 781 (6th Cir. 1998). Herein, the parties argue over whether *Parratt* is applicable and, if so, what state remedies the Plaintiff possesses. Given that the Court concludes that the Plaintiff does not

have a property interest in approval to construct and to operate a landfill, it is not necessary to address the parties' arguments concerning *Parratt.*

**15.** The Ohio Environmental Review Appeals Commission based its decision upon the finding that the grant of the PTI had been premised upon an invalid factual foundation. The

*C.F./Water Schregardus,* 1999 WL 1126437. As a result, the Plaintiff no longer has a valid PTI for the Property. Under Ohio law, the Plaintiff is prohibited from constructing and operating a landfill on the Property, if it does not have a valid PTI. *See* Ohio Rev.Code § 3734.02 and § 3734.05. However, no provision of Ohio law would prohibit the District from granting approval to the Plaintiff to construct a landfill on the Property, even though it no longer has a valid PTI.[16] Therefore, this Court, by directing the District to grant the Plaintiff such approval (one of the alternative remedies that it seeks), would not be ordering the District to violate state law. Accordingly, the Court concludes that the fact that the Plaintiff's PTI is no longer valid would not prevent it from granting the requested injunctive relief to the Plaintiff (if it is deemed entitled to relief). That said, the fact that Plaintiff no longer possesses a valid PTI certainly seems to undercut the existence of the property interest that the Plaintiff alleged it possesses. However, since the Court concludes that the Plaintiff has not set forth facts and circumstances amounting to a constitutionally protected property interest, as a matter of law, it does not explore the question of whether the loss of the PTI, alone, would prevent it from concluding that the Plaintiff possesses such an interest.

In *Silver,* the plaintiff asserted a substantive due process claim, alleging that the defendants had deprived him of property without due process by arbitrarily and capriciously rejecting his request for zoning approval to build condominiums on his property. The Sixth Circuit concluded that the plaintiff had not established a viable substantive due process claim, because he did not have a constitutionally protectable property interest in zoning approval to build the condominiums. In particular, the Sixth Circuit concluded that to establish that he had such a property interest, the plaintiff had to demonstrate that the defendants were *without* discretion to deny his request for zoning approval, if he met certain minimum, mandatory standards. 966 F.2d at 1036. Since the relevant zoning ordinances invested the defendants with discretion, the plaintiff did not have a property interest in zoning approval. Similarly, in *Triomphe,* the court concluded that the plaintiff did not have a property interest in a special use permit to construct condominiums on its property, since local authorities had discretion to deny plaintiff's request. *See also, Loreto Development Co., Inc. v. Village of Chardon, Ohio,* 1998 WL 320981 (6th Cir. 1998) (plaintiff did not have a property interest in zoning approval, which would support a substantive due process claim, since the local officials had discretion to decide whether to grant the request for such approval); *G.M. Engineers & Associates, Inc. v. West Bloomfield Township,* 922 F.2d 328, 331 (6th Cir.1990) (no property interest in zoning approval to divide two lots into eight for purposes of development, since local authorities had discretion); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir.1994) (no property interest exists in prospective permit, unless "the discretion of the issuing agency is so narrowly circumscribed as to virtually

Property is located over an aquifer that serves as a source of public drinking water. Ohio law prohibits granting a PTI for a landfill that is located over such an aquifer, unless the Director of the Ohio EPA has granted a waiver, which was done when Plaintiff was issued the PTI. The Review Appeals Commission concluded that the Director of the Ohio EPA had based his decision to grant the waiver on the faulty factual assumption that unfractured till lay below the proposed site of the landfill. Unfractured till would prevent water from leaching into the aquifer, while fractured till is more porous. The Review Appeals Commission found that fractured till lay beneath the proposed landfill.

16. Of course, such approval by the District would not entitle Plaintiff to construct a landfill, without a PTI, which is not presently in existence due to the recent action of the Ohio Environmental Review Appeals Commission.

assure conferral of the benefit").[17] Accordingly, the Court turns to the question of whether the Clark County Defendants had discretion to deny Plaintiff permission to construct and to operate a landfill on the Property.

The District is organized in accordance with §§ 343.01, *et seq.*, and §§ 3734.52, *et seq.*, of the Ohio Revised Code. Under § 343.01(G)(2), a solid waste district may adopt rules that prohibit any person or political subdivision from constructing, enlarging or modifying any solid waste facility until the plans and specifications for the landfill have been submitted to and approved by the district. In *Clark County Solid Waste District v. Danis Clarkco Landfill Co.*, 109 Ohio App.3d 19, 671 N.E.2d 1034 (1996), the Clark County Court of Appeals concluded that this statutory provision invests a county solid waste district with the authority to adopt rules which contain siting requirements for landfills. *See also, North Sanitary Landfill v. Bd. of County Commissioners*, 52 Ohio App.2d 167, 369 N.E.2d 17 (1976) (holding that statutory language, similar to that contained § 343.01(G)(2), gives discretion to a solid waste district either to allow or to disallow the construction of a landfill in its territory). The District has exercised this statutory authority to adopt rules, including Rule 1–796. Under that Rule, the District will consider, when determining whether to permit a landfill to be located within Clark County, access to the site and traffic, isolation from adjacent properties, isolation from sensitive ecology, isolation from important historic and cultural features, compatibility with a land use/comprehensive plan, nuisance abatement, cost, host community considerations and any other appropriate concern. This list of factors that will be considered, including any other appropriate concern, unquestionably demonstrates that the District has discretion to approve or to disapprove a proposed landfill.[18]

▮▮▮▮ Nevertheless, the Plaintiff argues that it has adequately plead that it has a property interest in constructing a landfill on the Property. The Plaintiff cites the familiar principle that property is a bundle of rights (*see e.g., Dolan v. City of Tigard*, 512 U.S. 374, 384, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994)), and argues that its bundle of rights includes the right to construct a landfill on the Property. According to the Plaintiff, the matters set forth in ¶ 49 of its Complaint establish that it has a justifiable expectation that it would be permitted to construct a landfill. This Court does not agree. In *Silver, supra*, the Sixth Circuit held that the plaintiff did not have a justifiable expectation in approval to build condominiums on his property, because the local zoning au-

---

**17.** The Sixth Circuit has applied a similar analysis to determine whether the plaintiff had a property interest in other types of cases involving disputes between entities of government. For instance, the Sixth Circuit has held that a "disappointed bidder" may establish that it had a property interest in a contract only if it has been awarded the contract or local authorities lack the discretion to reject its bid. *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir.1992). *See also, Ferencz*, 119 F.3d at 1247–48. In *LRL Properties*, the plaintiff alleged that it had suffered a deprivation of property, the right to participate in a housing subsidy program, without due process of law. The Sixth Circuit held that the District Court had properly dismissed the plaintiff's due process claims, since the discretion given to local authorities to permit that participation prevented the plaintiff from having a property interest in the subsidized housing program.

**18.** The Plaintiff has not argued that the District did not possess discretion to reject its request to construct a landfill. On the contrary, the Plaintiff argues, in effect, that Rule 1–796 gives the District too much discretion, because it does not contain sufficient standards which would constrain the exercise of such discretion. To the extent that the Plaintiff contends that the absence of standards constitutes a denial of due process, the Court rejects this contention, since the Plaintiff does not have a property interest in approval by the District to construct and to operate a landfill on the Property, regardless of the presence or lack of standards against which to determine whether to approve the siting of the landfill.

thorities possessed discretion to deny the request. *Accord, Triomphe, supra.* Based upon the reasons set forth above, this Court has concluded that the District possessed the discretion to deny approval to construct a landfill to the Plaintiff.[19]

In sum, the Court concludes that the Plaintiff has failed to allege that it has a constitutionally protected property interest in constructing and operating a landfill on the Property.[20] Accordingly, the Court sustains the Clark County Defendants' Motion to Dismiss (Doc. # 14) to the extent that, with that motion, those Defendants seek dismissal of Plaintiff's Substantive and Procedural due process claims (the First and Second Claims for Relief in Plaintiff's Complaint).

### C. Commerce Clause

The Commerce Clause, Article I, ¶ 8, clause 3 of the United States Constitution, authorizes Congress "[t]o regulate Commerce ... among the several states...." Although that language does not expressly limit the ability of the states and their political subdivisions to regulate commerce, it has long been understood that there is a dormant or negative aspect to the Commerce Clause, which prohibits the states and their political subdivisions from taking certain actions. In *Eastern Ken-*

*tucky Resources v. Fiscal Court of Magoffin County*, 127 F.3d 532 (6th Cir.1997), cert. denied, 523 U.S. 1072, 118 S.Ct. 1512, 140 L.Ed.2d 666 (1998), the Sixth Circuit discussed the jurisprudence surrounding the Dormant Commerce Clause:

Article I, § 8 cl. 3 of the United States Constitution states in part that "Congress shall have the Power ... To regulate Commerce with foreign Nations, and among the several States." "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South–Central Timber Dev. Inc. v. Wunnicke,* 467 U.S. 82, 82, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984). This self-executing limitation is often referred to as the "negative" or "dormant" aspect to the Commerce Clause. *Oklahoma Tax Comm'n v. Jefferson Lines Inc.,* 514 U.S. 175, 178–80, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). Consequently, any state regulation of interstate commerce is subject to scrutiny under the dormant Commerce Clause, unless such regulation has been

---

**19.** The Plaintiff makes two other points. *First,* it cites allegations in its Complaint that, in the late 1980's, Clark County officials encouraged its affiliates to proceed with plans to proceed with the proposed landfill. Doc. # 1 at ¶ 23. The Plaintiff does not allege that this encouragement constituted some type of contractual relationship between itself and the Clark County Defendants. Accepting the Plaintiff's allegations as true, the Court does not consider the act of encouragement to be sufficient to create a property interest. The Plaintiff has not cited any authority that would support the proposition that encouragement by government officials creates a property interest in a permit from those officials. Moreover, it bears emphasis that Plaintiff did not even exist when the Clark County officials encouraged its affiliates to proceed with plans for a landfill. *See* Doc. # 1 at ¶ 2 (alleging that Plaintiff was incorporated in August, 1990).

*Second,* the Plaintiff argues that the Clark County Defendants are denying it the opportunity to utilize the PTI it has obtained from the Ohio EPA. Putting aside for a moment the fact that Plaintiff no longer possess such a permit, the fact that a person must obtain permission from numerous levels of government in order to engage in an activity does not mean that the person obtains a property interest in that activity, insofar as receiving a permit from one level of government, when one of the other levels of government approves the activity.

**20.** Because the Court has so concluded, it is not necessary to address the Clark County Defendants' numerous other arguments in support of their request that the Court dismiss the Plaintiff's substantive and procedural due process claims.

preempted or expressly authorized by Congress.

The purpose of the Commerce Clause is to prohibit outright economic protectionism or regulatory measures designed to benefit in-state economic actors by burdening out-of-state actors. *New Energy Co. v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). It forbids states from "advanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state." *H.P. Hood & Sons v. Du Mond,* 336 U.S. 525, 535, 69 S.Ct. 657, 93 L.Ed. 865 (1949). In order to ferret out this illicit motive, we are instructed by the Supreme Court to engage in a two-step inquiry when reviewing state statutes for alleged violations of the dormant Commerce Clause. The first step involves determining whether the statute directly burdens interstate commerce or discriminates against out-of-state interests. Discrimination is defined as the "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys. Inc. v. Department of Envtl. Quality of Oregon,* 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). A statute can discriminate against out-of-state interests in three different ways: (a) facially, (b) purposefully, or (c) in practical effect. *Wyoming v. Oklahoma,* 502 U.S. 437, 454–55, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992). A statute that is found to be discriminatory, is per se invalid, *id.,* unless the state can demonstrate that it is "demonstrably justified by a valid factor unrelated to economic protectionism." *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 274, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).

If the statute is not discriminatory, we must nevertheless proceed to the second step. In that case, the statute is valid unless the burdens on interstate commerce are "clearly excessive in relation to the putative local benefits." *Pike v.*

*Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

*Id.* at 539–540.

Herein, the Plaintiff does not allege or argue that the Defendants have discriminated against interstate commerce. Rather, it contends that the actions of the Defendants violate the Dormant Commerce Clause, because the application of the siting process contained in the Amended Plan and Rule 1–796 will unduly burden interstate commerce. To establish such a claim, the Plaintiff must show that the Amended Plan and the Rule burden interstate commerce in a manner that is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). *See also, Eastern Kentucky Resources,* 127 F.3d at 540, 544–45. "The party challenging the statute bears the burden of proving that the burdens placed on interstate commerce outweigh the benefits that accrue to intrastate commerce." *Id.* at 545. In *Automated Salvage Transport, Inc. v. Wheelabrator,* 155 F.3d 59 (2nd Cir.1998), the Second Circuit discussed the type of burdens that a regulation must place on interstate commerce in order for a plaintiff to have a valid claim that the Dormant Commerce Clause has been violated:

> "We have explained that the 'incidental burdens' to which *Pike* refers 'are the burdens on interstate commerce that exceed the burdens on intrastate commerce.'" *Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock,* 93 F.3d 68, 75 (2d Cir.1996) (quoting *USA Recycling v. Town of Babylon,* 66 F.3d 1272, 1287 (2d Cir.1995), *cert. denied,* 517 U.S. 1150, 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996)); *New York State Trawlers Ass'n v. Jorling,* 16 F.3d 1303, 1308 (2d Cir.1994). Where a regulation does not have this disparate impact on interstate commerce, then "we must conclude that ... [it] has not imposed any 'incidental burdens' on interstate

commerce that 'are clearly excessive in relation to the putative local benefits.' " *USA Recycling,* 66 F.3d at 1288 (quoting *Pike,* 397 U.S. at 142, 90 S.Ct. 844, 25 L.Ed.2d 174). *Thus, the minimum showing required to succeed in a Commerce Clause challenge to a state regulation is that it have a disparate impact on interstate commerce. The fact that it may otherwise affect commerce is not sufficient. Id.* at 1287 (rejecting Commerce Clause challenge to Town of Babylon's takeover of local garbage market notwithstanding "relatively minor effects on both interstate and local commerce," because it did "not impose any different burdens on nonlocal as opposed to local garbage haulers"). *See also National Paint & Coatings Ass'n v. City of Chicago,* 45 F.3d 1124, 1131 (7th Cir.1995) (Easterbrook, J.), *cert. denied,* 515 U.S. 1143, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995).

*Id.* at 75 (emphasis supplied). *See also, Old Bridge Chemicals, Inc. v. New Jersey Dept. of Env. Protection,* 965 F.2d 1287, 1295 (3rd Cir.) (concluding that only burdens which discriminate against interstate commerce are subject to invalidation under *Pike,* because "where the burden on out-of-state interests rises no higher than that placed on competing in-state interests, it is a burden on *commerce* rather than burden on *interstate* commerce") (emphasis in the original), *cert. denied,* 506 U.S. 1000, 113 S.Ct. 602, 121 L.Ed.2d 538 (1992).

■ In *Automated Salvage Transport,* the plaintiffs alleged that an agreement, into which the defendants, a state agency and a private company, had entered, violated the Dormant Commerce Clause, because it would have had the effect of limiting the locations within the state of Connecticut where the plaintiffs could dispose of solid waste. Since the plaintiffs had failed to allege that the agreement had a disparate impact on interstate commerce, the Second Circuit affirmed the decision of the District Court to dismiss the plaintiffs' claim under the Dormant Commerce Clause, pursuant to Rule 12(b)(6). Herein, the Plaintiff does not allege that the actions of the Defendants will have a disparate impact upon interstate commerce. On the contrary, the only reasonable conclusion to be drawn from the allegations contained in the Plaintiff's Complaint is that those actions will fall more heavily upon intrastate commerce. For instance, the Plaintiff's theory is that it, and its affiliates took the initial steps to develop the proposed landfill, in part because Clark County officials led them to believe that the landfill was needed and would be utilized for the disposal of waste generated in Clark County. Moreover, the Plaintiff stresses that the solid waste generated in the counties that are adjacent to Clark County will be disposed of in the proposed landfill. In contrast, the only allegation contained in the Plaintiff's Complaint concerning the burden of the Defendants' actions on interstate commerce is that it had anticipated constructing a landfill with sufficient capacity to allow solid waste generated outside of Ohio to be disposed of within that landfill. Indeed, by preventing the Plaintiff from constructing the proposed landfill, the Clark County Defendants will be preventing the disposal of solid waste in Clark County, regardless of whether it was generated within the state of Ohio, or elsewhere. Moreover, the Plaintiff has not alleged any facts from which an inference could be drawn the Defendants' opposition to the proposed landfill stems from a desire to prevent waste that has moved in interstate commerce from being deposited at that site. Rather, the only permissible inference to be drawn from the allegations in the Plaintiff's Complaint is that the Defendants want to prevent the disposal of *all* waste at that location.

Accordingly, the Court sustains the Clark County Defendants' Motion to Dismiss (Doc. # 14) to the extent that, with that motion, those Defendants seek dismissal of Plaintiff's claim under the Dor-

mant Commerce Clause (the Third Claim for Relief in its Complaint).[21]

In sum, the Court has concluded that the Plaintiff's three federal claims against the Clark County Defendants must be dismissed.[22] As a result, the only claims remaining in this litigation are the Plaintiff's state law claims against the Clark County Defendants and its federal and state law claims against the Trustees. Although the Trustees have not filed a motion to dismiss, they would be entitled to dismissal of the Plaintiff's federal claims for the reasons set forth above. Moreover, even the most superficial perusal of the Plaintiff's Complaint reveals that the Plaintiff claims against the Trustees are not viable for other reasons. For example, the Plaintiff's federal claims are predicated upon the theories that the Clark County Defendants have violated the Due Process Clause of the Fourteenth Amendment and the Dormant Commerce Clause, by employing the Amended Plan and Rule 1–796 to deny it the right to construct and to operate a landfill on the Property. The Plaintiff has not alleged that the Trustees have the authority to employ the Amended Plan or Rule 1–796 to prevent the construction of the proposed landfill. Accordingly, the Court directs the Plaintiff to show cause, within 20 days from date, why the Court should not dismiss the Plaintiff's federal claims against the Trustees. In the event that the Court dismisses the Plaintiff's federal law claims against the Trustees, it will decline to continue to exercise supplemental jurisdiction over the Plaintiff's state law claims against all Defendants. *See* 28 U.S.C. § 1367(c)(3) (indicating that a District Court may decline to exercise supplemental jurisdiction over supplemental claims after it has dismissed all claims over which it has original jurisdiction); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1255–56 (6th Cir.1996) (noting the strong presumption that District Court decline to exercise supplemental jurisdiction over state law claims after it has dismissed federal claims pursuant to a 12(b)(6) motion).

---

21. Since the Court has concluded that the Plaintiff's claim under the Dormant Commerce Clause must be dismissed, because the Plaintiff has not alleged that the actions of the Defendants will have a disparate impact on interstate commerce, it is not necessary to address the Clark County Defendants' numerous other arguments in support of their request that the Court dismiss said claim.

22. Since the Court has concluded that the Plaintiff has not plead a viable federal claim over which it can exercise subject matter jurisdiction, it is not necessary to decide whether to abstain from exercising that jurisdiction. Accordingly, the Court overrules, as moot, the Clark County Defendants' Motion for Abstention (Doc. # 8).