Jay G. McGUIRE, et al., Plaintiffs,

v.

**CITY OF MORAINE, OHIO, et al., Defendants.**

No. C–3–99–16.

United States District Court, S.D. Ohio, Western Division.

Sept. 4, 2001.

B. Randall Roach, for plaintiffs.

Philip Herron, Robert Surdyk, Dayton, OH, for defendants.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 31), INSOFAR AS IT IS DIRECTED TOWARD FEDERAL CLAIMS IN COUNTS 1 AND 3 OF PLAINTIFFS' COMPLAINT; PLAINTIFFS' REMAINING STATE–LAW CLAIMS IN COUNTS 2, 4, 5, 6, 7 AND 9 DISMISSED, WITHOUT PREJUDICE TO REFILING IN STATE COURT OF COMPETENT JURISDICTION; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

This litigation stems from a dispute over the Plaintiffs' ability to construct a home on two contiguous parcels of real estate in a subdivision known as Heritage Estates. On January 22, 1997, the Plaintiffs entered into a contract with the City of Moraine to purchase the real estate. Thereafter, members of the City staff and the Moraine Planning Commission approved the Plaintiffs' request to replat the property so that a single home could be built on the two lots. In response, and in opposition to that approval, several residents of Heritage Estates brought the issue before the Moraine City Council, which overturned the decision of the City Planning Commission by a 4–3 vote. The Plaintiffs appealed that ruling to the Montgomery County Common Pleas Court, pursuant to Ohio Revised Code Chapter 2506. In a September 22, 1999, Decision and Entry, the Common Pleas Court reversed the Moraine City Council and reinstated the decision of the Moraine Planning Commission, concluding that rejection of the Plaintiffs' replat application was not supported by reliable, probative and substantial evidence.

On January 19, 1999, the Plaintiffs commenced the present litigation by filing a nine-count Complaint against the City of Moraine and Moraine City Council members Jill Crafton, Gary Trace and Robert Riley, who have been sued in their individual and official capacities.[1] (Doc. # 1). The Plaintiffs' various claims stem from the decision of the Moraine City Council to deny their replat request. The Plaintiffs specifically challenge the actions of Crafton, Trace and Riley, who cast three of the four votes against replatting the two lots. The Plaintiffs allege that Crafton, Trace and Riley actively campaigned against replatting, and led a drive to bring the issue before the City Council, so that they could vote on the issue and overturn the decision of the Moraine Planning Commission. The Plaintiffs contend that Crafton, Trace and Riley should have abstained from voting on the issue, because they held leadership positions in the Heritage Estates Homeowners' Association, which vigorously opposed replatting the Plaintiffs' lots. Pending before the Court is a Motion for Summary Judgment (Doc. # 31) filed by the Defendants.[2]

1. The Plaintiffs' Complaint includes a cause of action arising under 42 U.S.C. § 1983 and numerous state-law claims. Although no diversity of citizenship exists, the Court has federal-question jurisdiction over the § 1983 cause of action, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367.

2. For purposes of ruling on the pending Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiffs, who are the non-moving parties. In its substantive analysis, *infra*, the Court will recite additional pertinent facts, again construing those facts and all reason-

## I. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a

able inferences most strongly in favor of the Plaintiffs.

court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment

....."), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Analysis of Defendants' Motion for Summary Judgment (Doc. # 31)*

The Defendants seek summary judgment on each unresolved claim in the Plaintiffs' nine-count Complaint.[3] As a means of analysis, the Court first will address the Plaintiffs' federal-law cause of action, which is set forth in Counts 1 and 3.[4] The Court then will turn to the various state-law claims.

## A. *Plaintiffs' Federal–Law Claim (Counts 1 and 3)*

In Count 1 of their Complaint, the Plaintiffs assert a claim under 42 U.S.C. § 1983, alleging that the City of Moraine subjected them to an "onerous and hostile zoning process."[5] (Doc. # 1 at

**3.** In a March 27, 2000, Decision and Entry (Doc. # 25), the Court dismissed Count 8, pursuant to Rule 12(b)(6). With respect to Count 6, which sets forth a state-law tortious interference claim, the Court also dismissed that Count, pursuant to Rule 12(b)(6), insofar as it was directed toward Defendant City of Moraine and Defendants Crafton, Trace and Riley in their "official" capacities. (*Id.*). These previously dismissed claims will not be addressed herein.

**4.** As will be explained more fully, *infra,* the Plaintiffs' Complaint includes only one federal-law cause of action, which has been set forth in two separate counts.

**5.** The Plaintiffs' Complaint fails to make clear whether their § 1983 claim is directed toward only the City of Moraine, or whether it also

seeks to hold the individual Defendants liable under § 1983 in their individual capacities. On its face, Count 1 alleges that the City of Moraine deprived the Plaintiffs of various rights. (Doc. # 1 at ¶ 33). Nevertheless, for present purposes, the Court will proceed on the assumption that the § 1983 claim is actually directed toward the City of Moraine *and* the individual Defendants in their personal or "individual" capacities. In so doing, the Court notes that the individual Defendants have raised the defense of qualified immunity, which does not apply to claims against municipalities. *Harrill v. Blount County, Tennessee,* 55 F.3d 1123, 1126 (6th Cir.1995). Given that the individual Defendants have asserted qualified immunity in response to the Plaintiffs' § 1983 claim, they apparently have interpreted the Complaint as alleging individual

¶ 34). Although § 1983 does not create any constitutional rights, *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir.1990), it does provide "a remedy for deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In order to prevail under § 1983, the Plaintiffs must establish: (1) that they were deprived of a right secured by the federal Constitution or laws of the United States; (2) by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir.1998).[6]

In the present case, Count 1 of the Plaintiffs' Complaint does not allege the deprivation of any particular right secured by the Constitution or laws of the United States. In Count 3, however, the Plaintiffs have identified the alleged constitutional deprivations upon which their § 1983 claim depends.[7] In particular, the Plaintiffs allege in Count 3 that the Defendants deprived them of their Fourteenth Amendment procedural due process, sub-

stantive due process and equal protection rights.[8] (Doc. # 1 at ¶ 42–46).

In support of their Motion for Summary Judgment on Counts 1 and 3, the Defendants advance three arguments. *First,* they contend that the Plaintiffs' § 1983 claim fails, as a matter of law, because no basis exists for imposing liability on the City of Moraine under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Second,* the Defendants insist that the Plaintiffs were not deprived of any right secured by the federal Constitution or laws of the United States. In particular, the Defendants insist that their actions did not violate the Plaintiffs' federal due process or equal protection rights. *Third,* the individual Defendants contend that they are entitled to qualified immunity, even if they did violate one or more of the Plaintiffs' constitutional rights. (Doc. # 31 at 5–8, 10–15).

Upon review, the Court will focus solely on the Defendants' second argument, which it finds to be dispositive of the Plaintiffs' § 1983 claim.[9] For the reasons to follow, the Court concludes that the Defen-

capacity liability under the statute, and the Court will do likewise in its analysis herein.

6. The Defendants have not disputed that they were acting under color of state law.

7. Although Count 3 purports to set forth claims directly under the federal Constitution, the Sixth Circuit has recognized that "constitutional violations by state officials are not cognizable directly under the [C]onstitution (or by virtue of general federal question jurisdiction) because 42 U.S.C. § 1983 provides the exclusive remedy for such constitutional violations." *Sanders v. Prentice–Hall Corporation System, Inc.*, 178 F.3d 1296, 1999 WL 115517 (6th Cir. Feb.8, 1999) (unpublished). As a result, the Court will treat Count 3 as identifying the constitutional violations underlying the § 1983 claim in Count 1 of the Plaintiffs' Complaint.

8. Count 3 of the Plaintiffs' Complaint also makes a passing reference to the Due Process

Clause of the Fifth Amendment, which has no applicability herein, as it applies only to actions of the federal government. *See Scott v. Clay County, Tennessee*, 205 F.3d 867, 873 n. 8 (6th Cir.2000).

9. In light of the Court's determination that none of the Defendants deprived the Plaintiffs of any right secured by the Constitution, the Plaintiffs' § 1983 claim necessarily fails against the City of Moraine and the individual Defendants. *See, e.g., Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 996 (6th Cir.1994) (recognizing that the deprivation of a right secured by the Constitution is an essential element of a § 1983 claim against a municipality or an individual defendant). Consequently, the Court need not address the Defendants' alternative arguments regarding *Monell* liability and qualified immunity.

dants did not violate the Plaintiffs' Fourteenth Amendment procedural or substantive due process or equal protection rights, as matter of law. With respect to the issue of procedural and substantive due process, the Defendants are entitled to summary judgment, because their actions did not deprive the Plaintiffs of any constitutionally protected property interest. With respect to the equal protection issue, the Defendants are entitled to summary judgment, because the evidence does not reflect that they treated the Plaintiffs differently than any similarly situated individual.

### 1. *Plaintiffs' Procedural and Substantive Due Process Claims*

The Plaintiffs' procedural and substantive due process claims arise from the Moraine City Council's decision to reverse the Moraine Planning Commission and to deny their replat application. In support of these claims, the Plaintiffs first argue that an Ohio court already has declared the actions of the Moraine City Council to be a violation of their procedural and substantive due process rights. (Doc. # 41 at 26). As a result, the Plaintiffs insist that res judicata prevents the Defendants from relitigating whether the actions of the Moraine City Council violated the Fourteenth Amendment. (*Id.*).

▆▆▆▆ Upon review, the Court cannot agree that res judicata bars the Defendants from contesting whether they committed a Fourteenth Amendment procedural or substantive due process violation. In order to invoke the "issue preclusion" branch of res judicata,[10] the Plaintiffs must demonstrate, inter alia, that the issue in the present case (i.e., whether the Moraine City Council violated their procedural or substantive due process rights) is identical to an issue actually decided in earlier litigation. *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir.1999).

In the Plaintiffs' prior state-court action, brought under Ohio Revised Code Chapter 2506, the Montgomery County Common Pleas Court held that the decision of the Moraine City Council, reversing the Planning Commission's approval of the Plaintiffs' replat application, was unsupported by the preponderance of the substantial, reliable and probative evidence. In reaching this conclusion, the state court determined: (1) that the proposed replat did not violate any Moraine ordinances; (2) that Moraine City Council members Crafton, Trace and Riley acted improperly by voting on the replat application, despite a conflict of interest arising from their leadership positions in a homeowners' association that actively opposed the replat; and (3) that the Moraine City Council gave undue weight to lay witness testimony. *See McGuire v. Moraine City Council*, Montgomery County C.P. Case No. 97–6746 (Sept. 22, 1998) (Petzold, J.).

**10.** The doctrine of res judicata encompasses the related concepts of "issue preclusion" and "claim preclusion." In their Memorandum, the Plaintiffs occasionally refer to the "claim preclusion" branch of res judicata. (Doc. # 31 at 26, 34). However, the principal case upon which they rely, *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978 (1983), involves collateral estoppel or "issue preclusion," which appears to be the branch of res judicata upon which they actually rely. Indeed, the Sixth Circuit has recognized that a prior judicial determination concerning the violation of a plaintiff's constitutional rights implicates "issue preclusion." *See Bronson v. Board of Education of the City School District of Cincinnati*, 525 F.2d 344, 349 (6th Cir.1975). ("The district court's order forecloses the plaintiffs from showing that ... the actions, inactions or policies of the Board ... violated the constitutional rights of minority pupils or their parents. These issues have been decided and under the issue preclusion application of collateral estoppel may not be reopened.").

█ After reviewing the decision of the Montgomery County Common Pleas Court, this Court concludes that the present case does not involve an "identical" issue. The issue actually decided by the state court was whether the decision of the Moraine City Council was supported by the preponderance of the substantial, reliable and probative evidence. The state court did not decide whether Crafton, Trace and Riley had violated the Plaintiffs' procedural or substantive due process rights, and it does not follow that the City Council members necessarily violated those rights, merely because their decision was unsupported by the evidence.[11] In fact, as set forth in detail, *infra*, the Plaintiffs cannot prevail on their procedural or substantive due process claims, unless the Moraine City Council deprived them of a constitutionally protected property interest. In its ruling, however, the Montgomery County Common Pleas Court did not even purport to address whether the Moraine City Council deprived the Plaintiffs of a protected property interest, an issue which this Court finds to be dispositive herein. Consequently, the Court concludes that res judicata does not bar the Defendants from contesting whether they violated the Plaintiffs' procedural or substantive due process rights.[12] *Cf.* *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202 (6th Cir.1995) ("The reasonableness of the City Council's decision, Triomphe argues, was determined by the state courts and the federal courts are bound by this finding. We agree with the District Court that because the constitutional standard in reviewing zoning decisions is much narrower than the state's review, the question addressed by the two courts is not the same. Thus, collateral estoppel does not apply.").

█ Having rejected the Plaintiffs' reliance on the "issue preclusion" branch of res judicata, the Court turns now to the Defendants' argument that the Plaintiffs cannot establish a due process violation, as a matter of law. The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty or property, without due process of law." That constitutional provision has both substantive and procedural components. A governmental action that arbitrarily and capriciously deprives a person of property violates the substantive component of due process.[13] *37712, Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614 (6th Cir.1997). In addition, the deprivation of

---

11. Under Ohio Revised Code § 2506.04, the Montgomery County Common Pleas Court had the authority to find the decision of the Moraine City Council to be "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." After reviewing the evidence before it, however, the Common Pleas Court made no finding with respect to the constitutionality of the City Council's action, and it is not apparent whether the Plaintiffs even raised any constitutional issues in the state-court proceedings. In any event, as noted above, the Common Pleas Court decided only that the ruling by the Moraine City Council was not supported by the preponderance of the substantial, reliable and probative evidence.

12. Assuming, purely arguendo, that res judicata were to prevent the City of Moraine from contesting the procedural and substantive due process violations alleged by the Plaintiffs herein, the doctrine cannot possibly apply to Defendants Crafton, Trace and Riley in their "individual" capacities. In the proceeding before the Montgomery County Court of Common Pleas, the only party adverse to the Plaintiffs was the City of Moraine. Under Ohio law, however, a prior suit against a municipality has no preclusive effect with respect to municipal employees who are subsequently sued in their "individual" capacities. *Perry v. Croucher*, 165 F.3d 28, 1998 WL 661151 (6th Cir. Aug.31, 1998) (unpublished).

13. The present case does not involve any alleged deprivation of life or liberty.

property without certain procedural protections constitutes a violation of the procedural component of due process. *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097 (6th Cir.1995). In order to prevail on a claim under the substantive or procedural component of the Due Process Clause, a plaintiff must establish that he has suffered a deprivation of an interest in property. *Silver v. Franklin Township Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir.1992); *LRL Properties*, 55 F.3d at 1108. In *Ferencz v. Hairston*, 119 F.3d 1244 (6th Cir.1997), the Sixth Circuit restated the principles that a court must apply when determining whether a plaintiff has established a constitutionally protected property interest:

> To establish a property interest in a particular benefit, a plaintiff must have a "legitimate claim of entitlement to it." *[Board of Regents v.] Roth*, 408 U.S. [564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ]. Property interests are not created by the Fourteenth Amendment; instead, they are "created and defined by independent sources, such as state law." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir.1985) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)).

*Id.* at 1247.

 In the context of due process challenges in land use cases, a protected property interest exists if a plaintiff has either a "legitimate claim of entitlement" to use his land in a certain way, or a "justifiable expectation" that a governmental body will approve his desired land use. *Silver*, 966 F.2d at 1036; *Triomphe Investors*, 49 F.3d at 202. On the other hand, when a municipality retains the discretion to deny a plaintiff's requested land use,

even if all mandatory requirements are met, he does not have the requisite "legitimate claim of entitlement" or "justifiable expectation" needed to establish a property interest in a particular use of his land. *Silver*, 966 F.2d at 1036; *Triomphe Investors*, 49 F.3d at 202. This is so because "[a]n abstract need or unilateral expectation does not suffice to create a property interest...." *Richardson v. Township of Brady*, 218 F.3d 508, 516 (6th Cir.2000).

With the foregoing standards in mind, the Court concludes that the Plaintiffs cannot demonstrate a protected property interest to support their procedural and substantive due process claims. In their Memorandum, the Plaintiffs argue at length that: (1) the Defendants were impermissibly biased when they reversed the decision of the Moraine Planning Commission; (2) the Defendants failed to provide an impartial forum for the review of the Planning Commission's decision; (3) the Defendants acted under a conflict of interest when they reversed the decision of the Planning Commission; (4) the Defendants made an arbitrary and irrational decision when they failed to approve the Plaintiffs' replat application, despite the Planning Commission's prior approval of the same; and (5) the Defendants acted out of a personal or political animus when they reversed the decision of the Planning Commission. (Doc. # 41 at 29–43). The Plaintiffs cite a number of cases to support their argument that the foregoing acts of misconduct are sufficient to establish procedural and substantive due process violations. (*Id.*).

Even if all of the Plaintiffs' factual allegations are true, however, it is well-settled that they cannot establish a violation of substantive or procedural due process, as a matter of law, *unless* they possessed a property interest in the approval of their replat application. The Plaintiffs' allega-

tions of bias, prejudice, partiality and other improprieties do not establish the existence of such a property interest. This Court has recognized that "a fair and impartial decision maker is part of the process that is due [if a property interest is at stake], instead of the property interest being deprived." *Clarkco Landfill Co. v. Clark County Solid Waste Management District*, 110 F.Supp.2d 627, 635 (S.D.Ohio 1999) (Rice, J.). As a result, there is no need to consider factual issues such as whether the Defendants were biased, whether they failed to provide an impartial forum, whether they acted under a conflict of interest, whether they made an arbitrary and irrational decision, or whether they acted out of a personal or political animus, *unless* the record demonstrates that the Plaintiffs had a constitutionally protected property interest in the approval of their replat application. *Id.* In other words, the Plaintiffs must have had either a "legitimate claim of entitlement" to the approval of their application or a "justifiable expectation" that it would be approved.[14] *Silver*, 966 F.2d at 1036; *Triomphe Investors*, 49 F.3d at 202.

■ In opposition to the Defendants' Motion, the Plaintiffs argue that a protected property interest arose when the Moraine Planning Commission gave its "final" approval to their replat application. (Doc. # 41 at 29–30). According to the Plaintiffs, the Moraine City Council subsequently violated procedural and substantive due process when it deprived them of that protected property interest. (*Id.*). The Defendants argue, however, that the replat approval granted by the Moraine Planning Commission did not bestow any protected property interest on the Plaintiffs, because it was reviewed by the Moraine City Council and, therefore, was not final. (Doc. # 31 at 12; Doc. # 44 at 2–3). As is apparent, resolution of the parties' dispute turns on whether a property interest arose when the Planning Commission approved the Plaintiffs' replat application. If so, then the Moraine City Council's actions may have violated the Plaintiffs' substantive or procedural due process rights. On the other hand, if approval by the Moraine City Council was required before a protected property interest could arise, then the Plaintiffs cannot establish a substantive or procedural due process violation, as a matter of law, regardless of how biased or unfair the City Council members may have been. *See Clarkco Landfill Co.*, 110 F.Supp.2d at 635.

Upon review, the Court concludes that the replat approval granted by the Moraine Planning Commission did not provide the Plaintiffs with any protected property interest. Under Ohio law, municipal governments such as the City of Moraine are authorized to create planning commissions. *See* Oho Rev.Code § 713.01. In the present case, the City of Moraine created the Moraine Planning Commission and delegated to it the power to give final approval to a

---

**14.** As the Sixth Circuit recently explained in *Oakwood Homeowners Association at Stonecliffe v. City of Mackinac Island*, 230 F.3d 1359, 2000 WL 1434708 (6th Cir. Sept.20, 2000) (unpublished):

We have in the past acknowledged a cognizable substantive due process claim where plaintiffs alleged damages caused by an irrational municipal agency action. *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir.1992). As a threshold requirement to such a claim, however, plaintiffs must demonstrate that they possessed a state law-created property interest that was infringed upon by the agency action. *See G.M. Engineers & Assocs., Inc. v. West Bloomfield Township*, 922 F.2d 328, 331 (6th Cir.1990). In cases involving applications for land use permits, a plaintiff may make a showing of a property right by presenting evidence either that it possessed a "legitimate claim of entitlement" to the permit or that it had a justifiable expectation that the permit would issue. . . .

replat application, *absent an appeal* to the Moraine City Council. (*See, e.g.,* Haught depo. at 54–55). If an appeal to the City Council is taken, however, then that body renders the final decision on a replat application.[15] Indeed, the Moraine City Charter makes clear that the City Council is the final decision maker when the Planning Commission's ruling on a replat application is appealed.[16] In relevant part, the City Charter provides:

Any person, firm, corporation, or any officer, department, board or agency of the City, or any elector of the City who has been affected by any final decision of the Planning Commission in regard to its platting and subdivision duties or its duties to approve and implement a comprehensive general plan may appeal from such final decision to the Council of the City by filing a petition with the Clerk of Council within fifteen (15) days from the date of the decision and setting forth the facts of the case.

Council shall hold a public hearing on such appeal not later than thirty (30) days after such appeal has been filed with its Clerk. Council by an affirmative vote of four (4) of its members shall decide the matter, and their decision shall be final.

Moraine City Charter at § 7.3.

After reviewing the foregoing language, the Court is persuaded that the Plaintiffs

lacked a protected property interest in the approval of their replat application. Although the City of Moraine has delegated to its Planning Commission the authority to approve a replat application, that delegation of power is not absolute. As demonstrated by § 7.3 of the Moraine City Charter, the Moraine City Council makes the final decision on a replat application whenever an appeal is instituted. Given that the Moraine City Council has retained a right of review in such cases, it was the ultimate municipal decision maker with respect to the Plaintiffs' replat application. In light of this fact, the Court concludes that the approval granted by the Moraine Planning Commission did not provide the Plaintiffs with any protected property interest in this case.[17]

 Until the time for filing an appeal to the Moraine City Council expires, a replat applicant in the City of Moraine simply has no "legitimate claim of entitlement" or "justifiable expectation" regarding the final approval of his application. This is so because the approval granted by the Moraine Planning Commission remains subject to reversal at the sole discretion of the Moraine City Council. In addition, once an appeal to the Moraine City Council is instituted, a replat applicant has no "legitimate claim of entitle-

15. In their Memorandum, the Plaintiffs acknowledge that the "Moraine Planning Commission is the final authority for replat applications *unless* a properly instituted appeal is initiated to City Council." (Doc. # 41 at 56) (emphasis added). While the Plaintiffs argue that certain members of the City Council encouraged the appeal from the Planning Commission and should have recused themselves from ruling upon it, they cite nothing to suggest that the appeal itself was untimely or otherwise procedurally defective. (*Id.*).

16. A decision by the City Council remains subject to possible appeal to the Common

Pleas Court under Ohio Revised Code Chapter 2506. Within the City of Moraine itself, however, the City Council is the final decision maker when a party challenges a ruling of the Planning Commission.

17. The Court likely would reach a different conclusion if no appeal to the Moraine City Council had been taken. Absent an appeal, the replat approval granted by the Moraine Planning Commission would have ended the matter, and the Plaintiffs would have had a "legitimate claim of entitlement" to the replatting of their property.

ment" or "justifiable expectation" that the City Council will approve his application. Nothing in § 7.3 of the Moraine City Charter limits the Moraine City Council's discretion to deny a replat application, even if the applicant complies with all requirements established by the Planning Commission. Absent a restraint on the Moraine City Council's discretion, however, a replat applicant who comes before that body has nothing more than a unilateral expectation or desire for the approval of his replat request. As noted, *supra*, such an expectation or desire is insufficient to establish a protected property interest.[18] *Richardson*, 218 F.3d at 516. "Simply put, [an applicant] can have no legitimate claim of entitlement to a discretionary decision." *Id.* at 517.

The foregoing reasoning is consistent with the recent decision of the Tenth Circuit Court of Appeals in *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207 (10th Cir.2000). In *Hyde Park*, the appellate court held that the plaintiff lacked a protected property interest in having defendant Santa Fe City Council approve its proposed subdivision plat. In 1994, the plaintiff in *Hyde Park* submitted a proposed residential subdivision plat to the Santa Fe Planning Commission. *Id.* at 1209. The Planning Commission approved the proposed plat. *Id.* Without explana-

tion, the Santa Fe City Council subsequently voted to reverse the decision of the Planning Commission. *Id.* In response, the plaintiff filed suit under 42 U.S.C. § 1983, alleging that the Santa Fe City Council's action violated its procedural and substantive due process rights. *Id.* The district court sustained a Rule 12(b)(6) motion filed by the City Council, finding no protected property interest at stake, and the Tenth Circuit affirmed. In so doing, the appellate court recognized that the decision of the Planning Commission did not give rise to any protected property interest, because that decision was subject to review by the Santa Fe City Council.[19] *Id.* at 1211. The Tenth Circuit also concluded that the plaintiff had no "legitimate claim of entitlement" to the Santa Fe City Council's approval of its proposed plat, reasoning as follows:

Hyde Park argues it has a protectable property interest in the approval of its proposed plat because the City Council had a non-discretionary, mandatory duty to approve the plat. According to Hyde Park, because the plat complied with all the applicable ordinances of the City of Santa Fe, the Council's obligation to approve the plat was purely ministerial. While we are not altogether unsympathetic to Hyde Park's quandary, we conclude that the applicable ordinances

---

**18.** In the present case, it is undisputed that the City of Moraine had knowledge of the Plaintiffs' hope and desire to have their property replatted in order to construct a home in the middle of two lots. Such knowledge on the part of the City, however, is insufficient to create a state-law property interest. *Triomphe*, 49 F.3d at 203.

**19.** A city ordinance in *Hyde Park* gave the Santa Fe City Council the ability to review a final decision of the Santa Fe Planning Commission, sua sponte, within thirty days. *See Hyde Park*, 226 F.3d at 1211. In contrast, the Moraine City Council only has the power to review a final decision of the Moraine Plan-

ning Commission if a timely appeal is instituted. *See* Moraine City Charter § 7.3. This distinction has no bearing on the existence of a property interest in the present case, which differs from *Hyde Park* only with respect to the circumstances under which a decision of a planning commission is not truly "final" (i.e., when a sua sponte review is conducted, or when a timely appeal is instituted). Regardless of the particular event that triggers a review by City Council, however, *Hyde Park* supports the proposition that, when such a review does occur, the underlying decision of the Planning Commission fails to create any protected property interest.

read as a whole fail to place any discernible substantive limitations on the City Council's discretion in this matter, and thus fail as a matter of federal constitutional law to establish more than Hyde Park's unilateral expectation that the City Council would approve its proposed plat.

To support its argument, Hyde Park relies heavily on Santa Fe, NM, Code § 14–82.2E, which provides that "[t]he final plat shall be submitted for approval by the planning commission and recorded when these regulations and the conditions of the preliminary plat are met." Hyde Park's argument that the Planning Commission must approve the final plat for recording when the Commission determines all applicable regulations and conditions of approval have been met may well be correct. Otherwise, the recording of the plat at that stage would serve no useful purpose. And as a practical matter, we suspect the Planning Commission's final approval of a plat ends the plat approval process in most instances because the City Council's review of the Commission's actions is not mandatory. But the proposition that the City Council upon review must likewise approve a plat which meets all specified requirements does not follow from the language of the applicable ordinances.

Despite Hyde Park's protestations to the contrary, the Planning Commission is not the final policymaking authority in this case. Rather, we have already explained that the City Council has retained the final authority with respect to land use regulation matters, and has the power to review a final decision of the Commission. *See id.* § 14–7.5B. Once the City Council decided to exercise its power of review and provided notice to interested parties, the Planning Commission's final decision was stayed. *See*

*id.* § 14–7.5A. Thus, Hyde Park's plat was never recorded. Upon review, the City Council had the power to affirm, reverse, or modify the Commission's decision "as ought to be made." *Id.* § 14–7.5B. This language is hardly an endorsement of Hyde Park's claim that the City Council lacked discretion in this matter. Without clearly defined limitations on the City Council's exercise of discretion to assist us in our construction of local law, we hesitate to infer such limits and involve this federal court in a land use regulation dispute which is purely a matter of local concern. *See Norton v. Corrales,* 103 F.3d 928, 933 (10th Cir.1996). Because the ordinances as written contain no standards governing the City Council's exercise of discretion, the ordinances simply do not impose "significant substantive restrictions" on the City Council's power of review. *Jacobs v. City of Lawrence, Kansas,* 927 F.2d 1111, 1117 n. 4. Accordingly, the district court properly concluded that Hyde Park has no protectable property interest on which to base its due process claims.

*Id.* at 1212–1213 (footnotes omitted).

■ The foregoing reasoning by the Tenth Circuit is consistent with this Court's analysis herein. As in *Hyde Park,* the decision of the Moraine Planning Commission was subject to review by the Moraine City Council. As a result, the Planning Commission's ruling did not create any protected property interest. Additionally, as in *Hyde Park,* the Moraine City Council retained the discretion to reject the Plaintiffs' replat application, even if the application met all requirements established by the Planning Commission. Absent a restraint on the City Council's discretion, the Plaintiffs cannot establish a protected property interest in the approval of their replat request. Consequently, re-

gardless of the allegedly arbitrary and biased nature of the Moraine City Council's decision, its reversal of the Planning Commission does not give rise to a substantive or procedural due process violation, as a matter of law.[20] Accordingly, the Defendants are entitled to summary judgment, insofar as the Plaintiffs assert a § 1983 claim based on a violation of their procedural and substantive due process rights.[21]

### 2. Plaintiffs' Equal Protection Claim

The Plaintiffs' equal protection claim appears to have two components. *First*, the Plaintiffs contend that the Moraine Planning Commission and other members of the City staff subjected their replat application to more intense scrutiny than is applied to other applications. (Doc. # 41 at 44). According to the Plaintiffs, the Planning Commission and other City staff members "implement[ed] standards different from those imposed upon similarly situated individuals who had requested similar consideration." (*Id.* at 29). In support of this proposition, the Plaintiffs rely on affidavits from two members of the Planning Commission. (*Id.* at 44, citing Exh. 2 and 3). *Second*, the Plaintiffs contend that the Moraine City Council singled out their application for rejection as a result of illegitimate personal or political motives. (*Id.* at 44–45). The Defendants seek summary

judgment on both branches of the equal protection claim, arguing that the Plaintiffs were not treated differently than any similarly situated individuals. (Doc. # 31 at 14; Doc. # 44 at 5).

■ Upon review, the Court finds no genuine issue of material fact with respect to either component of the Plaintiffs' equal protection claim. "The basis of any equal protection claim is that the [government] has treated similarly situated individuals differently." *Silver*, 966 F.2d at 1036. In other words, "[t]he Equal Protection clause requires that a state and its subdivisions apply its legislation and actions evenhandedly to all persons similarly situated in a designated class." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 410 (6th Cir.1992), citing *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). In the present case, the pertinent "class" includes all individuals who have applied for a replat in the City of Moraine. In order to prevail on their equal protection claim, the Plaintiffs must establish, as a threshold matter, that the City of Moraine treated them differently than other replat applicants when it allegedly subjected their application to intense scrutiny and/or rejected it for illegitimate reasons.

---

**20.** The absence of a protected property interest does not give the Moraine City Council a license to engage in arbitrary or capricious conduct when reviewing replat applications. As noted, *supra*, Ohio Revised Code Chapter 2506 provides for judicial review of final decisions by the Moraine City Council. *Cf. Hyde Park*, 226 F.3d at 1213 n. 5 ("The City Council's action in this case, however, is not immune from judicial review. State law provides for review of the City Council's action. . . ."). In the present case, the Plaintiffs obtained such review, and the Montgomery County Court of Common Pleas reversed the decision of the Moraine City Council.

**21.** In their Memorandum, the Plaintiffs rely heavily on a Report and Recommendation filed by Magistrate Judge Michael R. Merz in *Danis Clarkco Landfill Co. v. Trustees of German Township*, 1997 U.S. Dist. LEXIS 21081 (S.D. Ohio. April 16, 1997) (Merz, M.J.), to support their argument that the Moraine City Council did violate their procedural and substantive due process rights. This reliance on *Danis Clarkco* is misplaced, however, given that the plaintiffs in that case had a vested property interest in receiving a zoning certificate to construct a landfill. *Id.* at *50-*59, *67-*68. For the reasons set forth, *supra*, the Court concludes that the Plaintiffs lack a property interest in the present case.

**898**

██ Regarding the Moraine City Council's denial of their replat application, however, the Plaintiffs have failed to cite evidence from which a trier of fact could find that they were treated differently than similarly situated individuals. In their Memorandum, the Plaintiffs do cite evidence establishing that their replat application is the only one to be rejected by the Moraine City Council in at least ten years.[22] (Doc. #41 at 29, 32; *see also* Haught depo. at 46; Watson depo. at 46). Although this fact may appear to support an equal protection claim, the same evidence establishes that the Plaintiffs' application is also the only one to be appealed to the Moraine City Council in at least ten years. (Watson depo. at 48). In fact, the Plaintiffs fail to cite any evidence suggesting that the Moraine City Council has ever reviewed another replat application on appeal from the Planning Commission.[23] Absent such evidence, the City Council's denial of the Plaintiffs' application, no matter how arbitrary or unjust, cannot possibly violate the Equal Protection Clause of the Fourteenth Amendment. As noted, *supra*, the essence of an equal protection violation is that a state actor has treated similarly situated people differently. *Silver*, 966 F.2d at 1036. As a matter of law, however-

er, the Moraine City Council cannot have treated the Plaintiffs "differently," given that they are the only replat applicants to come before that body.

The Plaintiffs' equal protection argument based on the actions of the Moraine Planning Commission and other City representatives is also unavailing. As noted above, the Plaintiffs contend that the Planning Commission and other City staff members subjected their replat application "to scrutiny not given to other equivalent applications." (Doc. #41 at 44). Elsewhere in their Memorandum, the Plaintiffs assert that the Planning Commission and other City employees "implement[ed] standards different from those imposed upon similarly situated individuals who had requested similar consideration." (*Id.* at 29).

The problem with this branch of the Plaintiffs' equal protection claim is twofold. *First,* the Plaintiffs provide few specific examples of ways in which representatives of the City of Moraine subjected their application to extraordinarily strict review, relying instead on conclusory allegations. *Second,* to the extent that the Plaintiffs have attempted to set forth specific examples, they have failed to identify any similarly situated replat applicants

**22.** The Plaintiffs also note that the Moraine Planning Commission has never rejected a residential replat application. (*See* Doc. #41 at Exh. 2, ¶7 and Exh. 3, ¶7). This fact does nothing to support the Plaintiffs' claim, however, given that the Moraine Planning Commission also approved their application.

**23.** While addressing a different issue, *the Defendants* suggest that the Moraine City Council *did* reject an earlier replat request. (Doc. #31 at 14 and Doc. #44 at 12). If true, this assertion undoubtedly would strengthen *the Plaintiffs'* equal protection claim. Upon review, however, the Court notes that the evidence belies the Defendants' assertion, which, incidentally, is disputed by the Plaintiffs (*See* Doc. #41 at 38). The first piece of evidence cited by the Defendants suggests that, on one

occasion, prospective home builders had "inquired" about placing a house in the middle of two lots, and had been told that they could not do so. (J. McGuire depo. at 29). The record does not indicate that these prospective builders ever submitted a replat application to the Moraine Planning Commission or instituted an appeal to the Moraine City Council. The second piece of evidence cited by the Defendants appears to relate to the same prospective home builders. (*See* Moraine City Council Meeting Minutes, attached to Doc. #1, Exh. C at 13). Once again, although those prospective home builders inquired about combining two lots, they never even submitted a replat application to the Moraine Planning Commission. (*Id.* at 13–14).

who received better treatment with respect to the City's review of their applications.

For example, in support of their equal protection claim, the Plaintiffs first argue that "[t]he Planning Commission members closest to [the replat application] process unequivocally state that the McGuires['] proposal was being subjected to scrutiny not given to other equivalent applications." (Doc. # 41 at 44). In support of this proposition, they cite an affidavit from Planning Commission member Tom Watts, who avers as follows:

I believe that the McGuires' replat application was given undue scrutiny and was treated differently, unfairly, and more harshly relative to other replat applicants. I sincerely believe that these actions were caused by the political animosity generated by a majority of four City Council members.

(*Id.* at Exh. 2, ¶ 13).[24]

The foregoing averment does nothing to demonstrate an equal protection violation. The Plaintiffs cannot establish a viable equal protection claim based on a conclusory assertion that the City of Moraine treated other nameless replat applicants better in unspecified ways. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 585 (6th Cir.1992) (noting that "conclusory allegations and subjective beliefs" are insufficient to create a genuine issue of material fact for trial). Watts' bare allegation that "other" applicants were treated differently does not create a genuine issue of material fact for trial, as he cites no facts to suggest that these unidentified individuals were similarly situated to the Plaintiffs.

In their Memorandum, the Plaintiffs also argue:

The McGuires had a constitutional right under the Fourteenth Amendment Equal Protection provision to have their replat reviewed under terms and conditions applicable to all other replats filed with the City. That was clearly not the case. Though replats occur monthly before the Planning Commission, no replat application has ever before been denied until the McGuires' request.

(Doc. # 41 at 44) (citations omitted).

As noted, *supra*, the Moraine Planning Commission and other members of the City staff approved the Plaintiffs' replat application. Consequently, the fact that the Planning Commission and other City employees also have approved all other replat applications does nothing to support an equal protection claim.[25]

The Plaintiffs next argue that "[t]he filing process itself to initiate the review [by the Moraine Planning Commission] inexplicably appears to deviate from customary practice." (Doc. # 41 at 44). In particular, they assert that

[w]hile the McGuires were subjected to repeated delay simply to file the request, many replat applications are actually modified even during or after Planning Commission [review]. No reasonable explanation exists to account for planning staff's repeated refusal to accept the replat except a politically charged climate where this application was harshly reviewed to cause the Plaintiffs to abandon their efforts.

(*Id.*) (citation omitted).

In support of the foregoing argument, the Plaintiffs rely on an affidavit from

---

24. Watts also makes other averments that the Court will discuss, *infra*.

25. As set forth, *supra*, insofar as the Plaintiffs assert an equal protection violation based on the City Council's subsequent rejection of their application, they cannot prevail, given their failure to cite evidence indicating that any other replat applicant has appeared before that body.

Planning Commission member Tom Watts, who avers, in relevant part, as follows:

8. I have never understood approval by a Homeowner's Association is a requirement in any replat application review. I cannot recall any instance where staff has indicated that such consideration was useful or appropriate.[26]

9. In my capacity as Chairman, I learned that there are instances where the City of Moraine itself has been the applicant relative to a replat proceeding. In fact, I recall deliberating in such a proceeding relative to a residential parcel owned by the City. The area is adjacent to Wax Park. The City to combine [sic] the area of the residential parcel with the area of another parcel which was City owned. I am not aware of any policy or requirement by which the City is prohibited from being an applicant to a replat process.

10. It is not uncommon for Replat Applications even before the Planning Commission to need revision or supplementation even at the time they are reviewed. I have always understood that the application materials are necessary to provide Planning Commission members guidance in making proper decisions and to address all issues. There is no rigid formality by which an application would be denied because of some administrative oversight relative to application materials. In fact, we have even allowed for amendment of materials and applications after review.

(*Id.* at Exh. 2, ¶ 8–10).[27]

When read in the context of the Plaintiffs' arguments about "delay" and irregularities in the filing of their replat application, Watts' affidavit appears to be related to three specific perceived equal protection violations. *First,* the Plaintiffs contend that City representatives initially, and incorrectly, advised them that approval by the Heritage Estates Homeowners' Association was required before their replat application could be reviewed by the Planning Commission. (*See, e.g.,* L. McGuire depo. at 28–29). As noted above, Watts avers in paragraph eight of his affidavit that no such approval was required, and the Planning Commission eventually acted on the Plaintiffs' application, without the approval of the Homeowners' Association. *Second,* the Plaintiffs contend that City representatives incorrectly advised them that they were required to own the two lots at issue before the Planning Commission could entertain a replat application.[28] (*Id.* at 22–23, 26, 28). In paragraph nine

---

26. The Plaintiffs also have provided the Court with an affidavit from Planning Commission member Gerald Hall, who avers "that approval by a Homeowner's Association" is not a requirement in any replat application review. (Doc. # 41 at Exh. 3, ¶ 10).

27. Two Moraine Planning Commission members also aver that between 1993 and 2000 no one other than the Plaintiffs submitted an application for a replat of lots in Heritage Estates, the area where the Plaintiffs' property is located. (Watts affidavit at ¶ 3; Hall affidavit at ¶ 13). If anything, these averments actually weaken the Plaintiffs' equal protection claim, as they tend to show the absence of any similarly situated replat applicants.

28. The Plaintiffs' real estate contract with the City of Moraine made their purchase of the two lots contingent upon the approval of their replat application. As a result, the Plaintiffs initially placed the purchase money in escrow, pending the replatting of the lots. According to the Plaintiffs, representatives of the City of Moraine subsequently informed them that their replat application could not be considered unless they released the escrowed funds. As a result, the Plaintiffs released the funds and purchased the property prior to obtaining the approval of their replat application. (L. McGuire depo. at 26, 38).

of his affidavit, however, Watts avers that the City of Moraine, as the owner of the two lots at issue, could have applied for replatting of the property, even before the Plaintiffs purchased it. *Third*, the Plaintiffs contend that City representatives initially, and incorrectly, advised them that existing easements on the two lots had to be vacated before the Planning Commission could consider their replat application. (*Id.* at 30, 35). Although paragraph nine of Watts' affidavit does not mention the easements by name, his statements about revising, supplementing and amending a replat application are consistent with the Plaintiffs' contention that the easements at issue could have been vacated after the Planning Commission initiated its review of their application. In fact, the record reflects that the Planning Commission ultimately did accept the Plaintiffs' replat application without requiring vacation of the easements. (*Id.* at 38).

 After reviewing the record, the Court concludes that the foregoing facts do not give rise to a viable equal protection claim, even when they are construed most strongly in favor of the Plaintiffs. In essence, the Plaintiffs argue that representatives of the City of Moraine, at least initially, imposed non-existent requirements on them before processing their replat application. These allegations do not support an equal protection claim. With respect to their first argument, the Plaintiffs have failed to identify any other individual who sought a replat of property located in an area governed by a homeowners' association. Absent such evidence, they cannot demonstrate that they were treated differently than a "similarly situated" replat applicant, even if the City of Moraine did provide them with inaccurate information. Likewise, with respect to their second argument, the Plaintiffs have not identified any other individual who entered into a contingent contract with the City to purchase land and for whom the City obtained replat approval before finalizing the sale. As a result, there is no genuine issue of material fact as to whether the Plaintiffs were treated worse than similarly situated individuals, even if the City did unnecessarily require them to release escrowed funds. With respect to their third argument, the Plaintiffs have not identified any other replat applicant who received information from City officials with respect to the necessity of vacating easements. Absent such evidence, the Plaintiffs cannot possibly establish an equal protection violation, even if City representatives did misinform them about the need to vacate easements before submitting a replat application. As noted above, the essence of any equal protection violation is that a state actor has treated similarly situated people differently, *Silver*, 966 F.2d at 1036, and the record reveals no genuine issue of material fact on this crucial point.

 Finally, the Plaintiffs argue that "Planning Commission members even cite two relatively recent replats involving residential property which were not subjected to [the same] intense scrutiny as Plaintiffs' request." (Doc. # 41 at 44). In support of this assertion, they cite an affidavit of Planning Commission member Gerald Hall, who avers:

> ... Aside from numerous applications of commercially zoned properties, there have also been at least two residential applications in which I have deliberated. One [is] located in Miami Shores and one in West Moraine plat. Furthermore, the City was the applicant in multiple proceedings and has itself initiated replat proceedings. Each of these proposal[s][was] comparable to the replat proposed by the McGuires. Both of the residential replats were also approved by [the] Planning Commission to my recollection. Further, I am not aware of

any instances where a residential replat application has been denied.

(Hall affidavit at ¶ 7).

Contrary to the Plaintiffs' argument, the foregoing averment is silent about the degree of "scrutiny" to which the City of Moraine subjected the two other residential replat applications. Hall simply states that the other two replat applications were approved by the Planning Commission. (*Id.*). As noted, *supra*, however, the Planning Commission also approved the Plaintiffs' application. Consequently, Hall's averment about two other replat applications fails to create a genuine issue of material fact with respect to an equal protection violation.[29]

In short, the record does not reveal any "similarly situated" individuals whom the City of Moraine treated better than the Plaintiffs with respect to its consideration of their replat applications. As a result, the Plaintiffs lack a viable basis for maintaining an equal protection claim under 42 U.S.C. § 1983. Likewise, they lack a viable substantive or procedural due process claim, given the absence of any constitutionally protected property interest at stake. Construing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Plaintiffs,

the Court finds no genuine issue of material fact precluding the entry of summary judgment against them on their § 1983 claim, which is premised solely upon a violation of their due process and equal protection rights. Accordingly, based on the reasoning and citation of authority set forth above, the Court will sustain the Defendants' Motion for Summary Judgment (Doc. # 31), insofar as it relates to Counts 1 and 3 of the Plaintiffs' Complaint.

## B. Plaintiffs' Unresolved State–Law Claims (Counts 2, 4, 5, 6, 7 and 9)

Having found the Defendants entitled to summary judgment on the only federal-law cause of action asserted against them, the Court declines to exercise supplemental jurisdiction over the unresolved state-law claims in Counts 2, 4, 5, 6, 7 and 9 of the Plaintiffs' Complaint.[30] It is well settled that a district court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction. *Weeks v. Portage County Exec. Offices*, 235 F.3d 275, 280 (6th Cir.2000) ("Having granted summary judgment to the defendants and dismissed all of the federal claims in this action, the district court did not abuse its discretion in dismissing the state law claims."); *Saglioc-*

29. In the remainder of their equal protection argument, the Plaintiffs discuss the Moraine City Council's rejection of their replat application. (Doc. # 41 at 44–45). The Court has fully addressed this issue, *supra*, concluding that the Plaintiffs cannot establish an equal protection violation, absent evidence that the Moraine City Council has ever approved a similar replat application on appeal from the Planning Commission.

30. As noted, *supra*, in a March 27, 2000, Decision and Entry (Doc. # 25), the Court previously dismissed Count 8, pursuant to Rule 12(b)(6). With respect to Count 6, which sets forth a state-law tortious interference claim, the Court previously dismissed that Count, pursuant to Rule 12(b)(6), insofar

as it was directed toward Defendant City of Moraine and Defendants Crafton, Trace and Riley in their "official" capacities. (*Id.*). In so doing, the Court reasoned that a party to a contract cannot tortiously interfere with its own rights thereunder. In its prior ruling, however, the Court refused to dismiss Count 6, insofar as it is directed toward Defendants Crafton, Trace and Riley in their "individual" capacities. Given that the Court has now found all of the Defendants to be entitled to summary judgment on the only federal-law cause of action asserted against them, the Court will decline to exercise supplemental jurisdiction over the unresolved portion of Count 6 and the other remaining state-law claims.

colo v. *Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state-law claims generally should be dismissed as well. *Id.; see also Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992). Accordingly, in its discretion, the Court declines to exercise supplemental jurisdiction over Counts 2, 4, 5, 6, 7 and 9 of the Plaintiffs' Complaint.

### III. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Defendants' Motion for Summary Judgment (Doc. # 31) is sustained, insofar as it relates to the federal-law cause of action set forth in Counts 1 and 3 of the Plaintiffs' Complaint. Judgment will enter accordingly. The unresolved state-law claims in Counts 2, 4, 5, 6, 7 and 9 are hereby dismissed, without prejudice to refiling in a state court of competent jurisdiction.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.